Howemi, J.
This is an action to recover the amount of a promissory note made to the order of and endorsed by the defendant, and to enforce a mortgage executed in favor of one A. Siekman, or any holder to secure its payment; the defence to which is, that said note was paid to the 'mortgagee and bona fide holder, who delivered the same to the defendant, after which it was lost or stolen, and upon defendant’s affidavit of its loss, the said mortgagee caused the mortgage to be erased from the public records; that the said loss and payment were duly advertised; and that the said note came thereafter into the possession of the plaintiff, without consideration, out of due course of business, and under circumstances depriving him of the legal or equitable right to recover upon the same. The case was tried before a jury, who rendered a verdict in favor of plaintiff, from a judgment on which the defendant has appealed.
In the case of Murray v. Lardner, 2 Wallace 110, the Supreme Court of the United States elaborately reviewed the authorities upon the rights and liabilities of parties to commercial paper, and educed the following propositions as settled law:
“ The possession of such paper'carries the title with it to the holder. The possession and title are one and inseparable”
, “ The party who takes it before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world. ”
“ Suspicion of defect of title or the knowledge of circumstances whioh would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part.
“ The burden of proof lies on the person who assails the right claimed by the party in possession. ”
In this case, it is shown that on the 21st August, 1861, the defendant borrowed of one A. Siekman a sum of money, and gave his note due at one year, secured by a mortgage in favor of the said Siekman or any ■h,older; that on 26th September following, he paid the note in presence of a witness to Siekman, who delivered it up to the defendant, and on the same day or the day following, the two applied to the notary, before whom the act of mortgage had been executed, to have it cancelled, when it was discovered that the note was lost; that the notary required the affidavit of the maker to the fact of the loss; advised the advertisement thereof, and upon the acknowledgment of Siekman that, as tiie last bona fide holder, he had received payment of the note, he gave the usual certificate, upon which the recorder of mortgages cancelled the mortgage; that the loss was, on the next day, (28th September,) and two ' subsequent occasions, advertised in the New Orleans Bee; that in December following, a stranger placed the note in the hands of E. Houillion, an attorney-at-law, to be discounted, who offered it to the plaintiff, and the two (Houillion and plaintiff) applied to Joseph Cohn, a notary, to *265 ascertain if the mortgage was correct or not; that Cohn expressed the opinion to plaintiff that the note was genuine; that at the request of plaintiff he called at the office of the former notary, (Her) examined the original act of mortgage, satisfied himself that it was the first mortgage resting on the property and duly recorded, and returned the note to Houillion with said information, through whom the plaintiff purchased, and paid a valuable consideration for the note on 27th December, 1861, about eight months before its maturity, there being no evidence that the advertisement of the loss was known to him.
In all this or in the whole evidence in the record, we find nothing to show bad faith or want of good faith in the plaintiff. The circumstances at the time of the transfer, as described by the witnesses, are not such as to defeat his title to the note or deprive him of the right to recover on the same.
According to the doctrine as above announced, his title would not be defeated by proof, that with the exercise of active vigilance he might have discovered the existence of the facts set up as a defence. It must be shown that he acted in bad faith; that he had knowledge or closed his eyes to facts or circumstances, which would carry knowledge of a defective title. 2 Parsons on Bills, 272, 279; 20 Howard, U. S. Rep. 843; 22 Id. 96.
On the evidence, however, before us, we must view plaintiff as a holder in good faith, for a valuable consideration before maturity, and that it is defendant’s misfortune to have to pay twice. To relieve the latter under the circumstances would seriously impair the negotiability of commercial paper. There is reason for maintaining the liability of the maker of a note under such circumstances.
It is possible that he may, after payment before maturity, reissue the note, and the public are not required to be on their guard in this respect, until after maturity. Mr. Story, in his work on Notes, § 384, says, “Although, as between the real and Iona fide holder and the maker, the payment whenever and however made, will be a conclusive discharge from the obligation of the note; yet, as to third persons, it may be far otherwise; for payment means payment in due course, and not by anticipation. If therefore, the maker should pay a promissory note, before it is due, to any holder, who should afterwards, and before its maturity, endorse or pass the same to any subsequent bona fide endorsee, or other holder, the latter would still be entitled to full payment thereof, from the maker, at its maturity; for payment of the note before it becomes due, is no extinguishment of the debt as to such persons,” This rule applies with the same force and justice where the maker loses the note, for he could guard against such contingency by erasing his name or otherwise defacing the note as soon as paid.
But the question as to the mortgage rests upon a different principle. When, as is shown, the note was paid and came into the possession of the maker and mortgagor, confusion took place, and the subsequent reissue of the note could not revive the mortgage. C. C. 2214, 3252, 3374; 4 R. 416. A mortgage is but an accessory to the principal obligation, the extinction of which, though it import a confession of judgment, by prescription, payment, novation, or otherwise, releases the mortgage.
*266 Mortgages, not being negotiable, are not subject to the rules of the commercial law by which the rights and obligations of parties to commercial paper are fixed. The mortgage in this instance, having been can-celled by the consent of the parties having the right, prior to the reissue of the note, so far as shown, was not revived in favor of the subsequent holders of the note.
We think the plaintiff entitled to recover on the note under the law merchant, but without mortgage.
' It is therefore ordered that the judgment appealed from; be reversed, and that plaintiff, Matthias Doll, recover of defendant, John Bizotti, the sum of twelve hundred dollars, with eight per cent, interest, from August 24th, 1861, till paid, five dollars cost of protest, and costs of suit in the lower court; costs of appeal to be paid by plaintiff and appellee.
Rehearing refused.